UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Loretta Ester**, individually and on behalf of all others similarly situated, | No. |
| Plaintiffs, | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| v. | |
| **Twomagnets, Inc.**, a Delaware Corporation, d/b/a **Clipboard Health**. | |
| Defendant. | |

Plaintiff, Loretta Ester ("Plaintiff"), sues the Defendant, Two Magnets, Inc., doing business as Clipboard Health (hereafter "Defendant" or "Clipboard Health") and alleges as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for unpaid wages, liquidated damages, attorneys' fees, costs, and interest under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. and Ohio Revised Code Ann. ("ORC") § 4111.0 for Defendant's failure to pay Plaintiff all earned overtime wages.

2.      The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Ark Best Freight Sys. Inc., 450 U.S. 728, 739 (1981). Under the FLSA, employers must pay all non-exempt employees one and one-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek.  See 29 U.S.C § 207.

3.      ORC § 4111 establishes the law regarding minimum wage and overtime within the State of Ohio.

4.    Plaintiff brings this action on behalf of herself and all similarly-situated current and former employees of Defendant who were worked as Nurses[1] and were classified by Defendant as independent contractors.

5.    Plaintiff, individually, and on behalf of all others similarly-situated, brings this action against Defendant for its unlawful failure to pay overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201-219 (the "FLSA").

6.    Plaintiff, individually, and on behalf of all others similarly-situated, brings this action against Defendant for its unlawful failure to pay overtime due and owing Plaintiff and others similarly-situated in violation of ORC § 4111.

7.    Plaintiff brings a collective action under the FLSA to recover the unpaid overtime owed to her individually and on behalf of all other similarly-situated employees, current and former, of Defendant.   Members of the Collective Action are referred to as the "Collective Members."

8.    Additionally, Defendant's failure to compensate Plaintiff and all others similarly situated in accordance with the overtime laws of the State of Ohio violates Ohio Revised Code § 4111.  Plaintiff, therefore, brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover unpaid wages and other damages owed under Ohio wage laws.  Members of the Rule 23 Class Action are referred to as the "Class Members."

---

[1]    For the purposes of this Complaint, "Nurses" is exclusively a job title used for the purpose of classifying the putative class of similarly situated individuals, is not necessarily the job title of the Plaintiff and putative class, and has no bearing or relation to any specialization, skill, education, training, or other qualification that might otherwise be associated with such a job title.  For example, Nurses may have different titles in accordance with their licensure (i.e. "LPN", "PRN", "RN" etc.) yet are still appropriate putative class members.

9.     The Collective Members are all current and former employees who worked as Nurses for Defendant in the State of Ohio and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

10.    The Class Members are all current and former employees who worked as Nurses for Defendant in the State of Ohio and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

11.    Defendant operates as Clipboard Health which provides nursing and healthcare staff to its clients nationwide. *See* www.clipboardhealth.com/about (last visited Feb. 23, 2022).

12.    At all relevant times, Defendant has operated pursuant to a policy and practice of intentionally misclassifying Plaintiff and all other similarly-situated employees as independent contractors.

13.    At all relevant times, pursuant to this misclassification, Defendant has willfully refused to pay overtime.

14.    In willfully refusing to pay overtime, Defendant has violated the overtime provisions of 29 U.S.C. § 207 and Ohio Revised Code § 4111.03.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq*. because this civil action arises under the Constitution and law of the United States.  This Court also has subject matter jurisdiction pursuant 28 U.S.C. § 1367 because the state law claims asserted herein are so related to claims in this action over which this Court has subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

-3-

16.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiff occurred within the Northern District of Ohio, and Defendant regularly conduct business in and have engaged in the wrongful conduct alleged herein – and, thus, are subject to personal jurisdiction in – this judicial district.

## PARTIES

17.    At all material times, Plaintiff is an individual residing in Cuyahoga County, Ohio, and is a current employee of Defendants.

18.    At all material times, Plaintiff regularly performed work for Defendants in Cuyahoga County, Ohio.

19.    At all material times, Defendant Twomagnets, Inc. is a Delaware corporation licensed to transact business in the State of Ohio and does business as "Clipboard Health".  At all material times, Defendant does business, has offices, and/or maintains agents for the transaction of its customary business in Summit County, Ohio.

20.    At all relevant times, Defendant was Plaintiff's employer under the FLSA.  The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  At all relevant times, Defendant had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiffs' employment with Defendant.  As a person who acted in the interest of Defendant in relation to the company's employees, Defendant is subject to liability under the FLSA.

21.    At all material times, Defendant was Plaintiff's "employer" as defined by Ohio Revised Code § 4111, *et seq*. The Ohio Revised Code defines "employer" as any individual, partnership, association, corporation, business trust, or any person or group of persons, acting in

the interest of an employer in relation to an employee." As detailed above, and further herein, Defendant acted in the interest of its business enterprise in relation to Plaintiff by setting Plaintiff's rate and method of pay, controlling her work schedules, controlling her conditions of employment, and maintaining her employment records. Each of these decisions by Defendant was designed to ensure the profitability and success of Defendant's business enterprise.

22.     Plaintiff, in her work for Defendant, was employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

23.     Plaintiff, in her work for Defendant, was employed by an enterprise that had annual gross volume of sales made for business in excess of one hundred fifty thousand dollars, exclusive of excise taxes at the retail level.

24.     At all relevant times, Plaintiff, in her work for Defendant, was engaged in commerce or the production of goods for commerce.

25.     At all relevant times, Plaintiff, in her work for Defendant, was engaged in interstate commerce.

26.     Plaintiff, in her work for Defendant, regularly handled goods produced or transported in interstate commerce.

## NATURE OF THE CLAIM

27.     Defendant does business as Clipboard Health and provides nursing and healthcare staff to its clients nationwide.

28.     Nurses, including Plaintiff are required to download Defendant's proprietary software on their phones and/or computers.

29.     Defendant then communicates to its Nurses through its software platform which it uses to assign and control the work of Plaintiff, the Collective Members and Class Members.

30.     Defendant assigns its Nurses, including Plaintiff, the Collective and the Class Members, to job vacancies that Defendant needs to fill for its clients.

31.     Plaintiff was hired by Defendant and worked for Defendant as a Licensed Practical Nurse ("LPN") from May 2020 through the present.

32.     At all relevant times, Defendant has determined the Plaintiff, the Collective Members' and the Class Members' rates of pay.

33.     At all relevant times, Defendant has paid Plaintiff a base hourly rate of $33.00 per hour.

34.     Plaintiff regularly works in excess of forty (40) hours in any given workweek.

35.     Defendant suffers or permits Plaintiff, the Collective Members and the Class Members to work as many as seventy (70) hours in a given workweek.

36.     Rather than classify Plaintiff as an employee, Defendant classified her as an independent contractor.

37.     Prior to beginning work with Defendant, Defendant requires Plaintiff, the Collective Members and the Class Members to agree to Defendant's Terms of Service. (*See* Clipboard Health Terms of Service attached hereto as Exhibit "B" and incorporated as if fully rewritten herein).

38.     These Terms of Service mandate that Plaintiff, the Collective Members and the Class Members will be classified as independent contractors and that they will not be paid overtime for time worked in excess of forty (40) hours in any given workweek. (*See* Ex. B at p. 4).

39.     At all relevant times, Nurses are not permitted to turn down jobs assigned to them by Defendant. If Plaintiff attempted to turn down work assigned by Defendant, she would face discipline, including unpaid suspension and probation.

40.     Defendant requires Plaintiff, the Collective Members and the Class Members to abide by its company-wide attendance policy. (*See* Ex. B. at pp. 14-17).

41.     Defendant forbids Plaintiff, the Collective Members and the Class Members from working directly for any of Defendant's customers. (*See id.* at pp. 11-12).

42.     Defendant forbids Plaintiff, the Collective Members and the Class Members from working for any of Defendant's competitors. *See id*.

43.     Defendant forbids Plaintiff, the Collective Members and the Class Members from having personal and/or romantic relationships with Defendant's customers' employees. (*See id.* at p. 13).

44.     Defendant forbids Plaintiff, the Collective Members and the Class Members from accepting gifts or gratuities from Defendants' customers. *See id.*

45.     Defendant requires Plaintiff, the Collective Members and the Class Members to abide Defendant's formal written attire and appearance policy. *See id.* at p. 6.

46.     Defendant prohibits Plaintiff, the Collective Members, and the Class Members from chewing gum, smoking, or using their cell phones while working. *See id*.

47.     Defendant requires Plaintiff, the Collective Members and the Class Members to abide by Defendant's formal written etiquette policy. *See id.*

48.     Defendant issues a Clipboard Health identification badge to Plaintiff, the Collective Members and the Class Members. *Id*.

49.     Defendant prescribes the manner in which Plaintiff, the Collective Members and the Class Members record their hours worked through Defendant's company-wide timekeeping policies. *Id* at p. 8.

50. Defendant requires Plaintiff, the Collective Members and the Class Members to take one unpaid 30-minute break during every shift. *See* Ex. B at p. 8.

51. Defendant requires Plaintiff, the Collective Members and the Class Members to abide by Defendant's formal written code of conduct. *See id.* at pp. 9-10.

52. Defendant requires Plaintiff, the Collective Members and the Class Members to abide by Defendant's formal written Code of Business Ethics. *See id.*

53. Defendant requires Plaintiff, the Collective Members and the Class Members to join in Defendant's company-wide Commitment to Ethical Business Practices. *See id*.

54. Defendant requires Plaintiff, the Collective Members and the Class Members to abide by Defendant's company-wide Security and Data Policies. *See id*. at p. 18.

55. Defendant requires Plaintiff, the Collective Members and the Class Members to abide by Defendant's formal Incident Policy. *See id.* at pp. 20-24.

56. Consistent with Defendant's common policy and practice, Plaintiff and others similarly situated individuals have been intentionally misclassified by Defendant as independent contractors in and effort by Defendant to minimize labor costs and maximize profits.

57. The FLSA applies to Plaintiff and all individuals similarly situated at all times during which they worked for Defendant. No exceptions or exemptions to the FLSA apply to Plaintiffs and those similarly situated.

58. Upon information and belief, Defendant employed thousands of Nurses throughout the relevant time period without paying overtime, and while denying them the rights and benefits due an employee.

59. At all relevant times, Defendant directly or indirectly exercised significant control over the wages, hours, and working conditions of Plaintiff and similarly situated individuals.

60.     At all relevant times, the employment terms, conditions, and policies that applied to Plaintiff were the same as those applied to other putative Collective Members and Class Members who also worked as Nurses for Defendant.

61.     Plaintiff, the Collective Members and the Class Members incurred financial loss, injury, and damage as a result of Defendant's business practice of misclassifying them as independent contractors and failing to pay them a minimum wage and overtime pay.

62.     Defendant's misclassification of Plaintiff, the Collective Members and the Class Members was willful.

63.     Defendant knew or should have known that it was improper to classify Plaintiff, the Collective Members and the Class Members as independent contractors.

64.     Plaintiff, the Collective Members and the Class Members cannot "elect" to be treated as employees or independent contractors.  Despite this, Defendant unfairly, unlawfully, fraudulently, and unconscionably attempted to coerce workers in the putative Collective and Class to waive their statutory rights and elect to be treated as independent contractors.

65.     Any contract which attempts to have workers in the putative Collective and Class waive, limit, or abridge their statutory rights to be treated as an employee under the FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable, and contrary to public policy.

66.     The determining factor as to whether Plaintiff and those similarly situated are employees or independent contractors under the FLSA is not the workers' elections, subjective intent, or any contract.  Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test.  *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947).  Under the economic reality test, employee status turns on whether the individual

is, as a matter of economic reality, in business for herself and truly independent, or, rather, is economically dependent upon finding employment in others.

67.     Under the applicable test, court use the following factors to determine economic dependence and employment status: (1) the degree of control exercised by the alleged employer; (2) the relative investments of the alleged employer and employee; (3) the degree to which the employee's opportunity for profit and loss is determine by the employer; (4) the skill and initiative required in performing the job; (5) the permanency of the relationship; and (6) the degree to which the alleged employee's tasks are integral to the employer's business.

68.     The totality of circumstances surrounding the employment relationship between Defendant, Plaintiff, the Collective Members and the Class Members establishes economic dependence on Defendant and employee status. Plaintiff, the Collective Members and the Class Members are not in business for themselves and truly independent, but rather are economically dependent upon Defendant.  The putative Collective and Class are not engaged in occupations or businesses distinct from that of Defendant.  Instead, Plaintiff, the Collective Members and the Class Members are the basis for Defendant's business.  Defendant retains pervasive control over the business operation as a whole, and putative Collective and Class.

**Degree of Control Exercised by Defendants**

69.     Plaintiff, the Collective Members and the Class Members do not exert control over any meaningful part of Defendant's business operation and do not stand as a separate economic entity from Defendant.  Defendant exercises control over all aspects of the working relationship with Plaintiff, the Collective Members and the Class Members.

70.     Plaintiff's, the Collective Members', and the Class Members' economic status is inextricably linked to conditions over which Defendant has complete control, including without

limitation advertising and promotion, business and financial relationships with customers, business and financial relationship with insurers, and customer volume.

71.  Defendant exercises the following significant control over the work conditions of Plaintiff, the Collective Member and the Class Members:

a.  Defendants require Plaintiff, the Collective Member and the Class Members to routinely work in excess of 40 hours per week;

b.  Defendant pays Plaintiff, the Collective Members and the Class Members a flat hourly wage in exchange for the nursing services that Plaintiff, the Collective Members and the Class Members provide Defendant's clients;

c.  Defendants direct Plaintiff, the Collective Members, and the Class Members with respect to where and when to work;

d.  Defendant requires Plaintiff, the Collective Members and the Class Members to wear a uniform;

e.  Defendant requires Plaintiff, the Collective Members, the Class Members to use Defendant's proprietary software which Defendant in turn uses to direct, control, monitor and supervise the work of Plaintiff, the Collective Members and the Class Members; and

f.  Plaintiff, the Collective Members and the Class Members do not use their own tools or equipment.

**Facts Establishing Defendant's Nurses are not in Business for Themselves**

72.  Plaintiff, the Collective Members and the Class Members do not exercise the skill and initiative of a person in business for oneself;

73.     Plaintiff, the Collective Members and the Class Members do not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of an independent contractor: they own no enterprise, nor do they maintain a separate business structure or facility.

74.     Plaintiff, the Collective Members and the Class Members have no control over customers, nor do they actively participate in any efforts to increase Defendant's customer base or profit, or to improve business in any capacity.

75.     Defendants do not permit Plaintiff, the Collective Members and the Class Members to hire or subcontract other qualified individuals to provide additional nursing services to customers, thereby increasing their revenue, as an independent contractor in business for oneself would have the authority to do.

**Facts Establishing Relative Investment**

76.     Plaintiff's, the Collective Members' and the Class Members' relative investment is minor when compared to the investment made by Defendant.

77.     Plaintiff, the Collective Members and Class Members make no financial investment in Defendant's facilities, advertising, maintenance, staffing, and contractual relationships.  All capital investment and risk belongs to Defendant.

78.     Plaintiff's, the Collective Members' and the Class Members' investment is limited to the phone and/or computer necessary to utilize Defendant's software.  Absent Defendant's investment and provision of the business, the Nurses would not earn anything.

**Facts Establishing Opportunity for Profit and Loss**

79.     Defendant manages all aspects of the business operation, including without limitation attracting investors, establishing business and customer relationships, maintaining the

premises, establishing the hours of operation, coordinating advertising, and hiring and controlling of staff. Defendant provides all necessary capital to open and operate the business.

80.     Plaintiff, the Collective Members and the Class Members have no responsibility for any aspect of Defendants' ongoing business risk.

81.     Plaintiff, the Collective Members and the Class Members earn a flat hourly wage and have no opportunity to share in the profits or loss incurred Defendant in the operation of its business.

**Facts Establishing Permanency**

82.     Plaintiff began working for Defendant in May 2020 and she continues working for Defendant through the present.

83.     Plaintiff, the Collective Members and the Class Members have worked in excess of forty (40) hours per week in their work for Defendant.

84.     Plaintiff, the Collective Members and the Class Members work for Defendant is not intended to be temporary or seasonal

**Fact Establishing that Defendant's Nurses are Integral to Defendant's Business**

85.     Plaintiff, the Collective Members and the Class Members are critical to Defendant's success. Defendant's operation is wholly dependent on having Plaintiff , the Collective Members and the Class Members accessible and available to fulfill the nursing needs of Defendant's customers.

86.     The primary "product" Defendant is in business to sell consists of the nursing services provided by Plaintiff, the Collective Members and the Class Members.

87.     Without the hourly work of its Nurses, Defendant would necessarily have no product to sell.

**<u>Facts Establishing that Defendant's Acts Were Willful</u>**

88.     All actions and agreements by Defendant described herein were willful and intentional, and they were not the result of mistake or inadvertence.

89.     Defendant was aware that the FLSA applies to its business at all relevant times and that, under the economic realities test applicable to determining employment status under those laws, Plaintiff, the Collective Members and the Class Members were misclassified as independent contractors.

90.     Nurses under conditions similar to those employed with Defendant have been determined to be employees–not independent contractors–in other FLSA cases.

91.     Despite this notice of their violations, and in an effort to enhance Defendant's profits, Defendant continued to intentionally misclassify Plaintiff, the Collective Members and the Class Members, and knowingly suffered or permitted them to work in excess of 40 hours during a workweek without paying them overtime compensation at a rate of one and one-half times their regular rate.  Such conduct was intentional, unlawful, fraudulent, deceptive, unfair, and contrary to public policy.

## <u>INJURY AND DAMAGE</u>

92.     Plaintiff, the Collective Members and the Class Members suffered harm, injury, and damages, including financial loss, as a result of Defendant's conduct complained of herein.

93.     Plaintiff, the Collective Members and the Class Members were entitled to overtime pay for their work performed for Defendant.  By failing to pay Plaintiff, the Collective Members and the Class Members overtime pay and interfering with their right to retain all of their earnings, Defendant injured Plaintiff, the Collective Members and the Class Members and caused them financial loss, harm, injury, and damage.

## FLSA COLLECTIVE ACTION ALLEGATIONS

94. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

95. Plaintiff brings the FLSA claims in this action as a collective action under 29 U.S.C. § 216(b).

96. Plaintiff asserts those claims on behalf of herself, and on behalf of all similarly situated Nurses of Defendant, who were not paid all overtime compensation required by the FLSA during the relevant time period as a result of Defendant's compensation policies and practices.

97. Plaintiff seeks to notify the following individuals of their rights under 29 U.S.C. § 216(b) to join this action by filing in this Court written notice of their consent to join this action:

> **All Nurses (or individuals with other similar job duties or titles) who worked for Defendant in Ohio in excess of forty (40) hours in any given workweek while being classified as an independent contractor at any point from three years prior filing their consent to join this lawsuit through the present.**

98. Upon information and belief, Defendants have employed hundreds, if not thousands, of Nurses during the period relevant to this action.

99. The identities of these individuals, as a group, are known only to Defendant. Because the numerous members of this collective action are unknown to Plaintiff, joinder of each member is not practicable.

100. Because these similarly situated Nurses are readily identifiable by Defendant and may be located through their records, they may be readily notified of this action and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their FLSA claims.

101.    Collective adjudication is appropriate in this case because the individuals whom Plaintiff wishes to notify of this action have been employed in positions similar to Plaintiff; have performed work similar to Plaintiff; and have been subject to compensation practices similar to those to which Plaintiff has been subjected, including unlawful misclassification as an independent contractor and failure to pay overtime as required by the FLSA.

### CLASS ACTION ALLEGATIONS

102.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

103.    Plaintiff brings his Ohio wage claims as a Rule 23 class action on behalf of the following Ohio Class Action Members:

> **All Nurses (or individuals with other similar job duties or titles) who worked for Defendant in Ohio in excess of forty (40) hours in any given workweek while being classified as an independent contractor at any point from three years prior to the filing of this Complaint to the present.**

104.    <u>Numerosity</u>.  The number of Class Members is believed to be over one hundred. This volume makes bringing the claims of each individual Class Member before this Court impracticable.  Likewise, joining each individual Class Member as a plaintiff in this action is impracticable.  Furthermore, the identity of the Class Members will be determined from Defendant's records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these claims.  To require individual actions would prejudice the Class Members and Defendant.

105.    <u>Typicality</u>.  Plaintiff's Ohio claims are typical of the Class Members because like the Class Members, Plaintiff was subject to Defendant's uniform policies and practices and was compensated in the same manner as the Class Members.  Defendant regularly required Plaintiff

and the Ohio Class Members to work in excess of 40 hours in a given workweek without paying them overtime.  Defendants misclassified Plaintiff and the Class Members as independent contractors.  This was commonly, though not exclusively, done in order to prevent Plaintiff and the Class Members in accordance to the overtime requirements of Ohio law.  As a result, Defendant failed to pay Plaintiff and the Class Members overtime in accordance with Ohio law.

106.    <u>Adequacy</u>.  Plaintiff is a representative party who will fairly and adequately protect the interests of the Class Members because it is in her interest to effectively prosecute the claims in this Complaint in order to obtain the unpaid wages and penalties required under Ohio law. Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation.  Plaintiff does not have any interest that may be contrary to or in conflict with the claims of the Ohio Class Action Members he seeks to represent.

107.    <u>Commonality</u>. Common issues of fact and law predominate over any individual questions in this matter.  The common issues of fact include, but are not limited to:

a.      The number of hours worked by Plaintiff and the Class Members;

b.      The amounts paid to Plaintiff and the Class Members;

c.      The degree of control Defendants exerted over Plaintiff and the Class Members;

d.      The relative investments of Defendant compared to Plaintiff and the Class Members;

e.      The degree to which Plaintiff's and the Class Members' opportunity for profit and loss was determined by Defendant;

f.      The skill and initiative required in performing the job;

g.      The permanency of the relationship; and

h. The degree to which Plaintiff's and the Class Members' tasks are integral to Defendant's business.

108. Common issues of law include, but are not limited to:

a. Whether Defendant paid all minimum wages due and owing to Plaintiff and the Class Members;

b. Whether Defendant paid overtime wages due and owing to Plaintiff and the Class Members for all hours worked in excess of 40 in a given workweek;

c. Whether Defendant improperly misclassified Plaintiff and the Class Members as independent contractors;

d. Whether Plaintiff and the Class Members are entitled to compensatory damages;

e. The proper measure of damages sustained by Plaintiff and the Class Members; and

f. Whether Defendant's actions were "willful."

109. <u>Superiority</u>. A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any of the Class Members could afford to pursue individual litigation against companies the size of Defendant, doing so would unduly burden the system. Individual litigation would magnify the delay and expense to all parties and burden the court system with duplicative lawsuits. Prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendant.

110. A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and

comprehensive supervision by a single court and Judge. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. The identities of the Class Members are readily identifiable from Defendant's records.

111. This type of case is well-suited for class action treatment because: (1) Defendant's practices, policies, and/or procedures were uniform; (2) the burden is on each Defendant to prove it properly compensated its employees; and (3) the burden is on each Defendant to accurately record hours worked by employees.

112. Ultimately, a class action is a superior forum to resolve the Ohio state law claims set forth in this Complaint because of the common nucleus of operative facts centered on the continued failure of Defendant to pay Plaintiff and the Class Members according to applicable Ohio laws.

113. <u>Nature of Notice to be Proposed</u>. As to the Rule 23 Class Members, it is contemplated that notice would be issued giving putative class members an opportunity to opt out of the class if they so desire, *i.e.* an "opt-out notice." Notice of the pendency and resolution of the action can be provided to the Class Members by mail, electronic mail, print, broadcast, internet, and/or multimedia publication.

## COUNT ONE: FAIR LABOR STANDARDS ACT
## FAILURE TO PAY OVERTIME

114. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

115. Defendant willfully failed or refused to pay Plaintiff and the Collective Members the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of their employment.

116. As a result, Defendant failed to compensate Plaintiff and the Collective Members at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

117. Defendant's practice of willfully failing or refusing to pay Plaintiff and the Collective Members at the required overtime wage rate violates the FLSA, 29 U.S.C. § 207(a).

118. Defendant knew that – or acted with reckless disregard as to whether – ITS failure to pay Plaintiff and the Collective Members the proper overtime rate would violate federal and state law, and Defendant was aware of the FLSA overtime requirements during Plaintiff's and the Collective Members' employment. As such, Defendant's conduct constitutes a willful violation of the FLSA.

119. Plaintiff and the Collective Members are therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Loretta Ester, individually, and on behalf of all Nurses similarly situated, respectfully requests that the Court grant relief in Plaintiff's favor, and against Defendant for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

## COUNT TWO: OHIO REVISED CODE § 4111
## FAILURE TO PAY OVERTIME

120. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

121. Defendant willfully failed or refused to pay Plaintiff and the Class Action Members the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of their employment.

122.    As a result, Defendant failed to compensate Plaintiff and the Class Action Members at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

123.    Defendant's practice of willfully failing or refusing to pay Plaintiff and the Class Members at the required overtime wage rate violates the overtime provisions of ORC § 4111.

124.    Defendant knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Class Members the proper overtime rate would violate Ohio law, and Defendant was aware of Ohio's overtime requirements during Plaintiff's and the Class Members' employment.  As such, Defendant's conduct constitutes a willful violation of Ohio law.

125.    Plaintiff and the Class Members are therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus liquidated and treble damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Loretta Ester, individually, and on behalf of all Nurses similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendant for compensation for unpaid overtime wages, plus liquidated and treble damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

RESPECTFULLY SUBMITTED this 24th day of February, 2022.

THE LAW OFFICES OF SIMON & SIMON

By: /s/ *James L. Simon*
James L. Simon (OH No. 0089483)
5000 Rockside Road
Liberty Plaza Building – Suite 520

Independence, OH 44131
Telephone: (216) 525-8890
Email: james@bswages.com

BENDAU & BENDAU PLLC

By: /s/ *Clifford P. Bendau, II*
Clifford P. Bendau, II (OH No. 0089601)
BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, Arizona 85060
Telephone AZ: (480) 382-5176
Email: cliff@bswages.com
          chris@bswages.com